IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| AMANDA TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-00701-DGK |
| | ) | |
| VITAMIN COTTAGE NATURAL FOOD | ) | |
| MARKETS, INC. a/k/a NATURAL | ) | |
| GROCERS BY VITAMIN COTTAGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION

This case arises out of Plaintiff Amanda Taylor's allegations that her employer, Defendant Natural Grocers,[1] retaliated against her after she filed discrimination charges against it, in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010, *et seq.* ("MHRA"). Now before the Court is Natural Grocers' motion for summary judgment (Doc. 53). For the following reasons, the motion is GRANTED.

**Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact. *Celotex Corp.*, 477 U.S. at 323. Summary judgment is

---

[1] Although its official name is Vitamin Cottage Natural Food Markets, Inc., the Court refers to Defendant as Natural Grocers because that is the name in which it does business.

only appropriate when "there is no dispute of fact and where there exists only one conclusion." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

## Undisputed Material Facts[2]

Defendant Natural Grocers is a natural and organic grocery store chain with over 152 stores in nineteen states. In December 2014, Plaintiff began working at Natural Grocers' Independence, Missouri, location as a cashier. She was quickly promoted to Produce Manager in May 2015 by then-Store-Manager, Tony Thebeau.

According to Natural Grocers' employee handbook, work shifts are determined by the store's operational needs, and employees should be available to work a variety of shifts, including opening, closing, weekends, and some holidays. The handbook explains that Store Managers will do their best to accommodate schedule requests, but such requests are not guaranteed and must be approved by the Store Manager. Moreover, the handbook states that attendance and punctuality are essential to working at Natural Grocers.

In August 2015, Plaintiff received her first written warning for attendance issues after she was late to her shift six times over the course of a month. The warning specifically stated: "Tardiness leads to time-management issues, especially in produce when the department must be prepared for customers before opening." The warning also directed Plaintiff to review the handbook's attendance policy and the Produce Manager job description.

In late 2016, Plaintiff became pregnant. Soon thereafter, her physician placed her on pregnancy-related lifting restrictions. On January 28, 2017, Plaintiff applied to be the Dairy

---

[2] The Court excluded asserted facts that were immaterial to the resolution of the pending motion, asserted facts that were not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. Similarly, the Court included facts that were not genuinely disputed by any evidence under Federal Rule of Civil Procedure 56(c)(1).

Manager through the store's human resources system, and she was transferred to that position in February 2017.[3]

The employee handbook required that, like the Produce Manager, the Dairy Manager be available to work based on the store's operational needs. Because Dairy Managers were responsible for placing product orders on Tuesdays, Thursdays, and Sundays by 8:00 a.m., they were required to be at the store by 5:00 a.m. to take inventory of the current stock and to prepare and place the department's product orders. Paul Phillips, the Dairy Manager from 2014 to August 2016, testified this was required of all dairy department managers at the Independence, Missouri, store to ensure the store's products were adequately stocked.

In February 2017, shortly after Plaintiff transitioned to Dairy Manager, Thebeau transferred to a different Natural Grocers' location, and Paul Phillips became the Store Manager for the Independence, Missouri, store. Upon his arrival at the store, Phillips learned that Thebeau had been accommodating Plaintiff's desired scheduled so that she could come in later than "operationally necessary" to take care of her child while she was the Produce Manager. Thebeau had also allowed her to bring her child to work on some occasions.

Plaintiff testified that she was unaware her shifts would have to start prior to 8:00 a.m. Her time records confirm, however, that she routinely clocked in to her shifts before 8:00 a.m. during her time as Produce Manager. And, after transferring to the Dairy Manager position, she clocked in between 5:00 a.m. and 7:30 a.m. approximately sixty times in the 115 days Plaintiff worked before taking maternity leave.

---

[3] Plaintiff and Natural Grocers dispute the facts surrounding her transition to the Dairy Manager position. Plaintiff alleges that Thebeau forced her to transfer. Natural Grocers argues that Thebeau suggested the transition to accommodate the pregnancy-related restrictions imposed by her physician. While these facts may have been important to the dismissed sex-discrimination claim, it is immaterial to Plaintiff's retaliation claim why she transferred to this position. The important fact is that she voluntarily applied and was transferred to this new role.

3

On May 8, 2017, Plaintiff received a formal disciplinary write-up outlining job performance issues between January 28 and April 26, 2017. The write-up stated that Plaintiff failed to clock out for her mandatory lunch break three separate times, and she failed to enter statistics into the store's accounting system after closing out cashiers on three separate occasions. The write-up also noted that, on one occasion, Plaintiff displayed unprofessional behavior toward the Assistant Store Manager, Erica McKinney, and other employees witnessed Plaintiff slamming grocery carts into doors. Finally, it noted an incident where Plaintiff lost the store's safe balancing sheet for the opening shift. Plaintiff refused to sign the corrective-action write-up.

The day after receiving the write-up, Plaintiff filed her first charge of discrimination, alleging she was forced into taking the Dairy Manager position, disciplined because of her sex, and retaliated against for complaining about employment discrimination. A couple weeks later, on May 24, Plaintiff filed her second charge of discrimination which asserted identical allegations but also included disability discrimination.[4] The next day, the Missouri Commission on Human Rights ("MCHR") issued Plaintiff a right-to-sue letter on her first filed charge, instructing: "you have the right to bring a civil action within ninety days of the date of this letter against the respondent(s) named in the complaint." In bold, capitalized letters, the First RTS specified, "**IF YOU DO NOT FILE A CIVIL ACTION IN STATE CIRCUIT COURT RELATING TO THE MATTERS ASSERTED IN YOUR COMPLAINT WITHIN 90 DAYS OF THE DATE OF THIS NOTICE, YOUR RIGHT TO SUE IS LOST**." Plaintiff did not file suit within ninety days.

In June 2017, the store experienced issues with dairy department products being short or out-of-stock. McKinney, the Assistant Store Manager, emailed Phillips detailing the deficiencies.

---

[4] The Court notes that Plaintiff did not bring a disability discrimination cause of action in this case.

She also noted that she routinely added to Plaintiff's product orders, without Plaintiff's knowledge, to ensure that shelves remained stocked. Phillips then alerted Anastasia Lara, Human Resources Manager, and requested direction before addressing the issues with Plaintiff.

On July 9, 2017, Plaintiff went on maternity leave. During her maternity leave, the Assistant Dairy/Frozen Department Manager, Ashley Stueve, temporarily handled Plaintiff's job duties. Time records show that during Plaintiff's maternity leave, Stueve clocked in within ten minutes of 5:00 a.m. at least twenty-two times for her Tuesday, Thursday, and Sunday shifts.[5] During Plaintiff's maternity leave, the dairy department's shelves were adequately stocked, and the store received fewer customer complaints about items being out-of-stock.

Five days before her return from maternity leave, Plaintiff emailed Phillips, stating, "The first 2 weeks I'm back I will only be available 8:00 am to 5:30 pm until my mom can start watching my baby at other hours." Phillips forwarded the request to Lara, the Human Resources Manager, who advised Plaintiff that the store would accommodate her request during her first three weeks back to work but that scheduling thereafter would be based on business needs.

Plaintiff returned from maternity leave on October 23, 2017. Four days after returning, Plaintiff was fourteen minutes late to her 8:00 a.m. shift. She also failed to work her entire shift, going home five hours early because she had a sick child at home. The next day, October 28, Plaintiff did not show up for her scheduled shift. Instead of calling her supervisors—as is required by company policy—Plaintiff emailed Phillips stating that her child was still sick, and she would not be in to work. Phillips responded: "As discussed previously please insure [sic] to call either [the other supervisor] or me when it is closer to your shift time to insure [sic] we got the message

---

[5] Defendant alleges she only started her shifts at 5:00 a.m. four times, while Plaintiff states that she arrived at or around 5:00 a.m. for twenty-two shifts. The Court's own review of Stueve's time records reveal that she started her Tuesday, Thursday, and Sunday shifts between 5:00 and 5:10 a.m. on *at least* twenty-two occasions during the relevant period (Doc. 54-19 at 2–5).

5

and are able to get any info needed for the dpt. the day you are missing." He reiterated that "[e]mails are not an approved way to communicate a missed shift since they may not be checked often enough or early enough to adjust for your absence."

On November 3, Plaintiff texted Phillips indicating that she needed to leave prior to the end of her shift on November 4. On November 4, Plaintiff arrived at work at 9:04 a.m. and left at 1:10 p.m., over four hours before her shift ended. Plaintiff testified that she was told she could not call Phillips at home or on his cell phone, and that she could not text or email to relay absences. Another supervisor was on duty on November 4 while Plaintiff was working, but Plaintiff neither spoke to that supervisor regarding her need to leave early nor requested authorization from that supervisor before leaving.

On November 6, Plaintiff had a phone call with Phillips, Lara, and Heidi Hayward, the Vice President of Human Resources, to discuss Plaintiff's concerns about her work schedule going forward. Phillips explained that the schedule is written for optimal ordering and operational needs for the store, and Hayward reminded Plaintiff that as a department manager, she was required to have open availability. Hayward told Plaintiff she was required to work her shifts as scheduled and would be held accountable for failing to do so.

On November 12, Phillips sent the Manager-on-Duty work schedule to the store's department managers. Plaintiff was scheduled to start her work shifts at 5:00 a.m. on Tuesdays and Thursdays. The next day, Plaintiff emailed Phillips:

> I'm not sure what you're expecting me to do about tomorrow knowing that I can not work at 5 am as previously discussed in last week's phone call. This is something I have not been able to do for over a year. As I also said in the phone call from last week I feel like [this] is still harassment stemming from when I was pregnant. I still feel as though this is another way for you/Natural Grocers to try and force me to quit. Please let me know what it is exactly you want me to do as I will not be able to be there before 8am.

6

Plaintiff also texted Phillips on November 14—her first scheduled 5:00 a.m. work shift since returning from maternity leave—notifying Phillips that she was not coming into work at all because she had nowhere to take her children. She also informed him that she had sent an email and called the store to notify him she would not be in. Plaintiff did not show up for her shift on November 14.

On November 15, Lara emailed Plaintiff reiterating that Plaintiff would be scheduled to work pursuant to the store's operational needs. And because the optimal time for placing accurate product orders was on the mornings the orders were due, Plaintiff's start time would be 5:00 a.m. on Tuesdays, Thursdays, and Sundays.

Plaintiff responded to Lara that she had not worked an early morning shift since October 2016, and that she was never told she would be scheduled pursuant to business needs. Plaintiff also claimed she was being retaliated against for asserting her rights under the MHRA and threatened to file an additional charge of discrimination if she was not accommodated to work the shifts and times she requested.

The next day—November 16—Plaintiff was scheduled to work at 5:00 a.m., but she arrived at 8:03 a.m. On November 17, Phillips (with Lara and Hayward present by phone) presented Plaintiff with a final written warning for her attendance issues on October 27, October 28, November 3, November 14, and November 16. The final written warning also outlined Natural Grocers' expectations that Plaintiff abide by the attendance policy, follow the scheduling requirements of the Dairy Manager, and adhere to protocol in notifying her supervisors if she was going to be late or absent. The warning concluded by stating, "[i]f behavior is not corrected/performance does not improve then further performance issues will result in disciplinary action up to and including dismissal."

So, when Taylor showed up at 7:58 a.m. to her 5:00 a.m. shift on November 21, Hayward called Plaintiff, with Phillips and another supervisor as witnesses, and terminated her employment. A week later, Plaintiff filed her third charge of discrimination, alleging that Natural Grocers retaliated against her by terminating her employment because she previously asserted her rights under the MHRA by filing the two charges in May 2017.

On May 31, 2018, the MCHR issued Plaintiff two right-to-sue letters: one for Plaintiff's second charge and one for Plaintiff's third charge of retaliation. Plaintiff filed a two-count complaint on July 31, 2018, claiming Natural Grocers and two store managers violated the MHRA by discriminating against her based on her sex (Count I) and retaliating against her for engaging in a protected activity (Count II). On January 10, 2019, this Court dismissed Count I of Plaintiff's complaint as untimely because she did not file suit for the complained-of discrimination within ninety days of her first right-to-sue letter. The Court also dismissed Plaintiff's two store managers because the MHRA was amended on August 28, 2017, to eliminate individual liability, and Plaintiff's only operative charge against the individuals alleged retaliation after October 23, 2017.

Accordingly, Plaintiff's only remaining claim is for retaliation, which alleges that Natural Grocers retaliated against her by terminating her employment after she filed two charges of discrimination.

**Discussion**

To establish a prima case of retaliation under the MHRA, a plaintiff must prove (1) she engaged in statutorily protected conduct; (2) the employer took adverse action against her; and (3) a causal relationship existed between the protected conduct and the adverse action. *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1032–33 (8th Cir. 2016) (citing *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 753 (Mo. Ct. App. 2011)). The proof of a prima facie case is satisfied with

a "minimal evidentiary showing." *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). "If the employee meets this burden, the burden then shifts to the employer to show a legitimate, non-discriminatory reason for its actions." *Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 325 (Mo. Ct. App. 2005). If that burden is met, then the employee must present evidence showing that the employer's reason is mere pretext for retaliation. *Id*. While Plaintiff's prima facie case requires only a minimal showing, proof of pretext requires "more substantial evidence." *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004) (quoting *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 726–27 (8th Cir. 2001)). The Court views "evidence of pretext . . . in light of the employer's justification." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)

Even assuming Plaintiff can establish a prima facie case of retaliation, Natural Grocers has met its burden of demonstrating that it had a legitimate, nondiscriminatory reason for terminating her. Plaintiff appears to concede as much in her brief by not addressing Natural Grocers' proffered reason for terminating Plaintiff's employment, and properly so. The undisputed record shows that Plaintiff had ongoing attendance issues, and attendance issues "constitute a legitimate, nondiscriminatory reason for discharge." *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1037 (8th Cir. 2005).

Because Natural Grocers met its burden, Plaintiff now must prove that its proffered reason for her termination was merely pretextual. "An employee may demonstrate pretext by two different methods." *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1117 (8th Cir. 2018). She can show pretext either by showing that her employer was more likely motivated by "retaliatory animus" or that the Court should not believe her employer's explanation because it

9

lacks any basis in fact. *Id*. "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the termination." *Id*.

Here, Plaintiff does not show that Natural Grocers' explanation was not based in fact. Instead, she argues that her termination was more likely due to retaliatory animus. In support of this argument, Plaintiff primarily relies on the temporal proximity between her November 15, 2017, email alleging retaliation and her termination six days later. But temporal proximity alone is not enough to establish pretext. *See Gisbon v. Geithner*, 776 F.3d 536, 541 (8th Cir. 2015) ("[temporal] proximity alone is insufficient to establish pretext."); *see also Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001) ("The fact that [the defendant's] rationale relies on the entire course of [the plaintiff's] performance . . . dulls the effect of proximity. Moreover, we have been hesitant to find pretext . . . on temporal proximity alone and look for proximity in conjunction with other evidence.") (internal citations omitted).[6]

Presumably recognizing as much, Plaintiff further argues that a reasonable jury could find Natural Grocers' proffered reason pretextual because it: accommodated Plaintiff's schedule prior to her filing the charges of discrimination and going on maternity leave; did not require the interim Dairy Manager, Stueve, to show up at or before 5:00 a.m. for her shifts; and lied about holding Thebeau accountable for accommodating Plaintiff's schedule when he was the Store Manager. Plaintiff's argument is unavailing.

As a preliminary matter, it is immaterial to Plaintiff's retaliation claim whether Natural Grocers held Thebeau accountable for working with Plaintiff to unofficially accommodate her

---

[6] Relatedly, the Court notes that the temporal proximity between the May 2017 charges the November 2017 is too remote to establish the necessary retaliatory animus. *See, e.g.*, *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) (holding that a six-month lapse between the protected activity and adverse employment action was insufficient to establish causation, much less pretext); *Medley*, 173 S.W.3d at 325–26 (a one-month period between protected activity and adverse action is insufficient to establish causal connection or pretext).

schedule. Thebeau left Natural Grocers in February 2017—just after she began as Dairy Manager and before the discrimination charges were filed—and had no personal knowledge of Plaintiff's work schedule while she was Dairy Manager.

Further, although the record shows that Plaintiff was not required to regularly report at 5:00 a.m. for her shifts prior to her maternity leave, she was required to report to work regularly (both as Produce Manager and Dairy Manager) between 5:00 a.m. and 7:30 a.m. More importantly, though, the store received customer complaints about items being out of stock when Plaintiff's shift did not begin at 5:00 a.m. Fewer complaints occurred when the interim manager began reporting to work at 5:00 a.m. on the days the department orders went out.

To that point, the requirement to report at 5:00 a.m. on Tuesdays, Thursdays, and Sundays was a requirement for *all* Dairy Managers, not just Plaintiff. As Dairy Manager from 2014 to August 2016, Phillips began his Tuesday, Thursday, and Sunday shifts at 5:00 a.m. Plaintiff claims that Natural Grocers did not require Stueve, the interim Dairy Manager, to work 5:00 a.m. shifts. But Stueve's time records show that she regularly clocked-in at, or within ten minutes of, 5:00 a.m. on those days during her tenure.[7] Moreover, Plaintiff does not dispute that when Stueve was interim manager, the store shelves were adequately stocked, and the department had fewer customer complaints about items being out of stock.

Here, Plaintiff's evidence of pretext simply falls short. Her engagement in a protected

---

[7] The Court also notes that Plaintiff's argument, to the extent she claims that Natural Grocers engaged in disparate treatment when it did not discipline Stueve for being late to shifts, is also without merit. While "instances of disparate treatment can support a claim of pretext," Plaintiff did not attempt to meet her burden of proving that she and Stueve were similarly situated in all relevant respects, including that the offenses were of the same or comparable seriousness. *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1044 (8th Cir. 2000) (quoting *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)). Plaintiff provided no evidence that Stueve was late for her shifts as scheduled, that she failed to show up to her scheduled shifts, that she left scheduled shifts early without providing proper notice to management, or that she was on a final written warning.

activity does not insulate her from adverse action for violating workplace rules. *See Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005) (engaging in a protected activity "does not clothe [Plaintiff] with immunity for past and present inadequacies") (quoting *Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 455 (8th Cir. 1997)). And the uncontroverted facts show that Plaintiff violated Natural Grocers' workplace rules.

After Plaintiff's maternity leave ended, Natural Grocers accommodated her schedule for her first three weeks back. During those three weeks, she missed a day of work, failed to show up on time, and left early. Because of these attendance issues, Natural Grocers had a conversation with Plaintiff about her work schedule, informing her that she would be required to show up at 5:00 a.m. on Tuesdays, Thursdays, and Sundays because this was the optimal time for placing product orders to ensure that shelves were adequately stocked. On her first scheduled 5:00 a.m. shift, Plaintiff failed to show up at all. Two days later, when she arrived to work three hours late, Natural Grocers issued her a final written warning. While on her final written warning, Plaintiff showed up to a shift three hours late, and Natural Grocers' terminated her. Plaintiff simply cannot ignore that she blatantly disregarded Natural Grocers' attendance rules.

Moreover, Natural Grocers' articulated a legitimate business need for requiring her to work at 5:00 a.m. on certain days. As the Eighth Circuit has routinely recognized, "a federal court is not a super-personnel department with authority to review the wisdom or fairness of business judgments made by employers." *Rooney*, 878 F.3d at 1118. "The evidence must do more than raise doubts about the wisdom and fairness of the employer's opinions and actions—it must create a real issue as to the genuineness of the employer's perceptions and beliefs." *Id*. Plaintiff cannot point to specific instances creating that issue here.

## Conclusion

Because Plaintiff has failed to establish that Natural Grocers' legitimate, non-discriminatory reason for terminating her employment was pretext for retaliation, Natural Grocers' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date:  January 22, 2020                         /s/ Greg Kays
                                                GREG KAYS, JUDGE
                                                UNITED STATES DISTRICT COURT